UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-mc-80743-MIDDLEBROOKS/MATTHEWMAN

IN RE APPLICATION OF ORTHOGEN
INTERNATIONAL GMBH,

     Petitioner,

For an order pursuant to 28 U.S.C. § 1782
to conduct discovery for use in a foreign
proceeding.

_____/

FILED BY ___SW___ D.C.

Oct 16, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

**ORDER OVERRULING OBJECTIONS TO SUBPOENAS DUCES TECUM AND
DENYING MOTION TO QUASH OR MODIFY SUBPOENAS OR IN THE
ALTERNATIVE MOTION TO STAY ENFORCEMENT OF SUBPOENAS [DE 20]**

     **THIS CAUSE** is before the Court upon the following: (1) Edward Capla and Yolanda

Capla's ("Deponents") Objections to Subpoenas Duces Tecum, Motion to Quash or Modify

Subpoenas or the Alternative Motion to Stay Enforcement of Subpoenas ("Motion to Quash")

[DE 20]; (2) Orthogen International GmbH's ("Orthogen") Opposition [DE 23]; (3) Deponents'

Reply [DE 26]; (4) the Order of Referral [DE 24] from the Honorable United States District

Judge Donald M. Middlebrooks, referring the Motion to Quash for appropriate disposition; (5)

the Joint Notice of Conferral [DE 30], filed pursuant to the Court's Paperless Orders [DE 25;

29]; (6) the August 29, 2023 in-person hearing on Deponents' Motion to Quash [DE 31]; (7) the

Court's Interim Order [DE 32] following the August 29, 2023 hearing, which required

Deponents and Orthogen to each file post-hearing memoranda; (8) Deponents' Post-Hearing

Memorandum [DE 33]; and (9) Orthogen's Post-Hearing Memorandum [DE 34]. Thus, the

matter is fully ripe for review, and the Court has considered argument of counsel at the August

29, 2023 hearing and the aforementioned filings, as well as the entire docket in this case.

# I.  BACKGROUND

On May 4, 2023, Petitioner Orthogen International GmbH ("Orthogen") filed an *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding [DE 1]. Subsequently, on May 15, 2023, the Honorable Donald M. Middlebrooks, United States District Judge, issued an Order Granting *Ex Parte* Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 [DE 11]. Within that Order, Judge Middlebrooks authorized Orthogen "to serve Edward Capla and Yolanda Capla with the subpoenas annexed to the Memorandum of Law as Exhibit B" and noted that "[m]otions to quash the subpoenas, if any, may be addressed pursuant to the procedures set forth in Fed. R. Civ. P. 45." [DE 11 at 1]. Accordingly, on July 6, 2023, Deponents Edward Capla and Yolanda Capla filed the instant Motion to Quash [DE 20].

# II.  MOTION, RESPONSE, REPLY, HEARING, AND POST-HEARING MEMOS

## a.  Motion to Quash [DE 20][1]

As stated within the Motion to Quash, from 2011 through 2014, several license agreements were entered into between either Orthogen and Dr. Edward Capla, or between Orthogen and Drs. Douglas Schottenstein and Edward Capla, to license the "know how" and to provide for royalty payments for the use of Orthogen's Regenokine Program. [DE 20 at 1–4]. According to Deponents, records were maintained under each of the license agreements, and the records were periodically examined and audited by Nina Breidenbach on behalf of Orthogen. *Id.* at 5. Deponents state they were present during each of these audits made by Ms. Breidenbach "as

---

[1] As part of Deponents' Motion to Quash, in addition to the extensive argument contained within the Motion to Quash, Deponents have also attached a Memorandum of Law in Support at DE 20-4. The Memorandum of Law specifically addresses the factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). For the sake of brevity, Deponents' arguments concerning the *Intel* factors are addressed in Section III, *infra*.

representative of Orthogen pursuant to the 2012, 2013 and 2014 Agreements" and note that each time, Ms. Breidenbach indicated there was "no problem" indicated by the audits. *Id.* at 5–6.

That being said, Deponents argue that prior to receiving the subpoena in this case, Dr. Capla did not "receive[] from Orthogen, or any of its agents or lawyers, a request to examine the records, invoices, data bases and documentation of the Licensees related to the Regenokine program or Orthogen's rights to royalties pursuant to the Regenokine License Agreements described above." *Id.* at 6. Thus, Deponents argue that the present proceeding is a premature and unnecessary use of judicial resources. *Id.* Indeed, Dr. Capla states that if a request had been made to review or audit the records related to the Regenokine Program, he would have cooperated fully. *Id.* at 7.

Next, Deponents argue there is no factual basis to seek records or information related to the May 24, 2011 agreement between Orthogen and Dr. Capla, as the recent lawsuit filed by Dr. Schottenstein in the Southern District of New York—in which Orthogen learned of purported fraud—did not mention the 2011 license agreement and the facts giving rise to Dr. Schottenstein's claims began in "mid-2012." *Id.* at 7–8. Consequently, according to Deponents, "[t]aking Orthogen at its word that it intends to file complaints in Germany based on Dr. Schottenstein's statements in the SDNY action, and considering there is no mention in the SDNY complaint concerning the 2011 Agreement or royalty payments thereunder, there is no reason or factual basis for Orthogen to seek discovery related to the 2011 Agreement or royalty payments thereunder in the present action." *Id.* at 8–9.

Beyond the issues raised surrounding the May 24, 2011 agreement, Deponents note that Orthogen's Application is "based on facts alleged in a complaint which Orthogen, itself, says asserts meritless claims." *Id.* at 9. As noted by Deponents, "[i]n stating that the 'claims against

3

the Orthogen parties [in the SDNY complaint] are meritless, Orthogen is in effect stating that the allegations against one co-conspirator, Orthogen, in the SDNY action are meritless, but the allegations against the person with whom it conspired, Edward Capla, are an honest factual basis for seeking the discovery it seeks in the present action and for filing a lawsuit against Edward Capla in Germany." *Id.* at 10.

Further, Deponents argue that fairness and judicial economy will be promoted if the depositions are taken in the SDNY action, as Orthogen, the Deponents, and Dr. Schottenstein are all parties to that lawsuit, whereas in the instant case, Dr. Schottenstein is not a party. *Id.* at 10–11. Deponents also argue that "the events, relevant records and witnesses with knowledge concerning this dispute are located in the Southern District of New York." *Id.* at 11–12. And, Deponents argue that the purposes for which the discovery is sought in the instant proceeding can be accomplished in the SDNY action. *Id.* at 13.

Finally, Deponents argue that Orthogen seeks to evade readily available processes in Germany for obtaining discovery. *Id.* at 13. This is because "there are many ways, as explained in the Declaration of Dr. Daniel H. Sharma, how Orthogen can, in fact, obtain the information and documentation it seeks through the subpoenas served on Edward Caplan and Yolanda Caplan in a German civil proceeding." *Id.* at 16. Accordingly, Deponents request that the Court quash the subpoenas served on them in this proceeding, or enter "an order to stay enforcement of the subpoenas served on them in this proceeding pending a resolution of the action filed in the Southern District of New York where all parties to the three sided dispute are named in the complaint and any depositions would allow for participation by all of those parties." *Id.*

     b.  <u>Orthogen's Opposition [DE 32]</u>

Orthogen begins by arguing that no basis exists for Deponents' Motion to Quash or Stay the Subpoenas. [DE 23 at 4]. Specifically, Orthogen notes that Deponents "do not dispute that Orthogen has established each of the statutory requirements for obtaining discovery pursuant to Section 1782" and that Deponents do not dispute "that Orthogen is entitled to the discovery that it seeks through the 1782 Petition." *Id.* Rather, Orthogen argues that Deponents "resort to arguing (incorrectly) that (i) the same discovery that Orthogen seeks through the Subpoenas can (and should) be obtained by Orthogen either in the Contemplated German Proceeding or in the SDNY Action, and thus (ii) the discretionary *Intel* factors support quashing or staying the Subpoenas." *Id.* at 6.[2]

First, with respect to the Contemplated German Proceeding, Orthogen argues that even when documents may be available in a foreign jurisdiction, there is no requirement to first seek discovery from that jurisdiction before applying to a district court for Section 1782 discovery. *Id.* Moreover, on this matter, Orthogen argues that the German "Stufenklage" procedure "does not provide a mechanism to ensure that [D]r. Capla would even appear in the Contemplated German Proceeding." *Id.*

Next, as to the SDNY action, Orthogen argues that neither Deponents nor Orthogen expect the SDNY case to reach the discovery stage. *Id.* at 7. That said—and in any event— Orthogen maintains that Dr. Schottenstein's claims in that case are "unrelated to the claims for which Orthogen seeks Section 1782 discovery here." *Id.* Thus, according to Orthogen, "[e]ven if discovery were to proceed in the SDNY Action, it would not overlap with the discovery Orthogen seeks here." *Id.* at 8. Further, Orthogen argues that Dr. Schottenstein will be afforded

---

[2] *Intel* refers to *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

the opportunity to participate in discovery here, and that the doctrine of *forum non conveniens* is inapplicable to the case at hand. *Id*

Turning to legal argument, Orthogen argues that the "*Intel* factors all favor . . . the discovery Orthogen seeks." *Id.* at 9. Specifically, with respect to the first discretionary factor— whether the person from whom discovery is sought is a participant in the foreign proceeding— Orthogen argues that it "does not intend to sue Mrs. Capla in the Contemplated German Proceeding" and that, as to Dr. Capla, "when, as here, a party seeking discovery pursuant to Section 1782 may be unable to obtain the discovery in the foreign proceeding, the first factor favors granting the discovery." *Id.* at 10.

Next, with respect to the second and third *Intel* factors—the receptivity of the foreign court to U.S. federal court judicial assistance and whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions—Orthogen argues that "courts in this district consistently have rejected the precise argument that the Deponents are advancing: that a party is required to seek discovery in the foreign tribunal prior to seeking discovery under Section 1782." *Id.* at 13. Regardless, Orthogen argues that whether it has a basis to *seek* discovery in Germany "does not speak to whether (much less establish that) Orthogen will in fact be able to *obtain* the discovery in Germany." *Id.* at 15.

As to the last discretionary *Intel* factor—whether the requested discovery is unduly intrusive or burdensome—Orthogen argues it is justified in seeking discovery from Deponents relating to the 2011 license agreement "because [D]r. Capla became a licensee of the Regenokine Program pursuant to that agreement" and it was only after 2012 that Dr. Schottenstein became a *co-licensee*. *Id.* at 17–18. As stated by Orthogen, "Dr. Schottenstein's verified statements in his pleadings in the SDNY Action indicating that [D]r. Capla's reports substantially underreported

6

the number of patients treatments during the period October 2012 to May 2020 more than justify Orthogen seeking discovery from the Deponents for the additional year that [D]r. Capla submitted reports." *Id.*

Finally—looking beyond the doctrine of *forum non conveniens* (which Orthogen argues is inapplicable because both the instant case and the SDNY action are located in the United States)—Orthogen argues that: (1) the pendency of motions to dismiss; (2) the difference in the claims before the SDNY action; and (3) Dr. Schottenstein's purported lack of involvement do not render SDNY the proper forum. *Id.* at 19–23.

c.   Deponents' Reply [DE 26]

Deponents begin by noting that "[i]n submitting its Application, Orthogen failed to inform this court of facts concerning Dr. Schottenstein, and the condition of his mental health, that it stated in its Complaint against Dr. Schottenstein filed in the Regional Court of Dusseldorf, Germany dated December 21, 2022." [DE 26 at 2]. Indeed, in response to Dr. Schottenstein's claims concerning Orthogen in the SDNY action, Deponents appear to argue that Dr. Schottenstein gave the impression of "frightening emotional instability." *Id.* at 3.

Next, Deponents argue that the filing of the Dusseldorf Complaint against Dr. Schottenstein defeats the assertion that Orthogen cannot sue Dr. Capla "without first obtaining the information and documentation it seeks through the Subpoena to Testify at a Deposition in a Civil Action filed in this case." *Id.* at 5. Thereafter, Deponents argue that—contrary to Orthogen's assertion—Orthogen's audit rights survive termination of the license agreements. *Id.* at 5. And, according to Deponents, Orthogen's assertion that it would only be entitled to a penalty order in the German proceeding without first deposing Dr. Capla is misleading. *Id.* at 5–6.

Finally, Deponents argue that Orthogen incorrectly assumes that there is a certainty its motion to dismiss in SDNY will be granted. *Id.* at 7. Deponents additionally note that the invitation to Dr. Schottenstein to participate in this case is immaterial, since "[t]here is no provision in the Federal Rules of Civil Procedure to allow a non-party to examine a witness at a deposition and there is no case law precedent which would allow a non-party to examine a witness." *Id.* at 9.

d.   <u>August 29, 2023 Hearing</u>

The Court heard argument on Deponents' Motion to Quash [DE 20] on August 29, 2023. During the lengthy August 29, 2023 in-person hearing, the Court reserved ruling on Deponents' Motion to Quash [DE 20]. However, the Court made certain rulings, which the Court memorialized in its August 30, 2023 Interim Order [DE 32]. Specifically, the Court ordered the following:

> On or before September 12, 2023, Deponents and Orthogen ("the parties") shall each file a post-hearing memoranda, advising the Court of the following: (1) whether, if the Court allows Orthogen to take the deposition of Edward Capla in this section 1782 proceeding, Edward Capla would have the right to take the deposition of Orthogen in this section 1782 proceeding, and if so, whether Edward Capla wishes and desires to take the deposition of Orthogen in this proceeding (and whether Orthogen in fact consents to that); (2) whether Dr. Schottenstein can participate in any court-ordered deposition of either Edward or Yolanda Capla in this section 1782 proceeding; (3) the receptivity of the German courts to any deposition taken in this proceeding; (4) which party, if any, has the burden of proof on the receptivity issue and any additional facts regarding the receptivity issue; and (5) whether it is legally appropriate or proper for this Court to transfer this section 1782 proceeding to the section 1782 proceeding currently pending in the United States District Court for the Southern District of New York involving Dr. Schottenstein.

[DE 32 at 2] (emphasis omitted). Pursuant to the Court's Interim Order, Deponents and Orthogen each filed a post-hearing memorandum of law.

e. <u>Deponents' Post-Hearing Memorandum [DE 33]</u>

In Deponents' Post-Hearing Memorandum, Deponents addressed the five topics referenced in the Court's Interim Order. First, with respect to the deposition of Orthogen, Deponents argue that a proper response is difficult, as there are certain "unknown conditions," such as what witnesses would appear on behalf of Orthogen, or whether the transcripts of the depositions of any Orthogen witnesses would be received into evidence in the German proceeding. [DE 33 at 1–2]. Thus, "[g]iven these various and sundry unknowns, the Caplas would prefer to take the depositions of all of the Orthogen witnesses in one consolidated proceeding in the Southern District of New York where they know for certain the facts alleged and issues framed by the pleadings against them, where they can see the documentary evidence that would support the allegations being made against the[m] before they take any depositions, and where they knew that the depositions will be admitted into evidence." *Id.* at 3. And, according to Deponents, "[t]he lack of certainty of the actual facts and issues framed by contemplated pleadings in a German proceeding against Edward Capla and the unavailability of documents possessed by Dr. Schottenstein which form the basis of the contemplated proceeding by Orthogen make the taking of depositions in the Southern District of New York a more efficient method of discovery . . . ." *Id.* That being said, it is Deponents' position that this Court lacks jurisdiction under Section 1782 "to compel Orthogen to provide testimony or produce a document" because Orthogen does not reside in, and is not found in the Southern District of Florida. *Id.* at 4.

Second, with respect to Dr. Schottenstein's participation in depositions in the instant case, Deponents argue that Dr. Schottenstein is not a party and that "[t]here is no provision in the Federal Rules of Civil Procedure to allow a non-party to examine a witness at a deposition and

there is no case law precedent from a federal court which would allow a non-party to examine a witness." *Id.* at 5. Moreover, Deponents argue that by requesting Dr. Schottenstein's participation at any deposition, "Orthogen is in effect seeking to join Dr. Schottenstein as an adverse party defendant pursuant to Fed. R. Civ. P. 20(a)(2)," which is problematic because "instead of filing an application for discovery where both Dr. Schottenstein and the Caplas were included in the same proceeding, it chose to file two separate 1782 proceedings: one against Dr. Schottenstein in the Southern District of New York and a second against the Caplas in the Southern District of Florida." *Id.* at 6.

Third, as to the receptivity of German courts to any deposition taken in this proceeding, Deponents utilize the Declaration of Dr. Daniel Sharma to argue that depositions are "foreign to German law." *Id.* at 6–8. Indeed,

> In a German court proceeding, it is the judge who first examines the witness. Examination is not done by American style question and answer. Rather, the witness tells a narrative of what he or she knows on a general subject. Any questions asked by lawyers must conform to the topic of an examination that is determined by the judge. In those proceedings, a party to the case can only be examined if there is no other sufficient means of producing the evidence which would be the subject of the party's testimony. Here, since all of the medical and financial records of the Regenokine treatment at issue are held at the offices of Dr. Douglas Schottenstein and all of the records were prepared by employees of Dr. Schottenstein, such a circumstance does not exist. There is no German case precedent for allowing such a deposition in order to circumvent the established procedures of German law.

*Id.* at 8–9. Additionally, Deponents also argue that Mrs. Capla "cannot be compelled to testify in a proceeding where her husband is a party." *Id.* at 9.

Fourth, as to the burden of proof on the receptivity issue, Deponents cite *Department of Caldas v. Diageo, PLC*, 925 F.3d 1218 (11th Cir. 2019), for the proposition that district courts "need not apply a rigid burden-shifting framework to properly weigh the discretionary factor of

receptivity in a § 1782 case." [DE 33 at 11] (citing *Dep't of Caldas*, 925 F.3d at 1223). However, Deponents note that the "party seeking application of foreign law has the burden of proving the relevant legal principles under that foreign law." *Id.* at 12 (quoting *Koshani v. Barton*, 374 F. Supp. 3d 695, 710 (E.D. Tenn. 2019)). Deponents also point out the difficulty in proving a negative, "i.e., German courts will not accept transcripts of their depositions into evidence in a case brought by Orthogen in a German court proceeding against Edward Capla." *Id.* at 12–13.

Finally, with respect to the propriety of transfer to the Southern District of New York, Deponents argue that a number of different factors support transferring the case to the Southern District of New York, including, *inter alia*, that "the overwhelming number of Regenokine treatments at issue in this dispute were performed in New York." *Id.* at 15. As stated by Deponents, "[i]n sum, the locus of operative facts in this case is in the Southern District of New York; this court has broad discretion to transfer venue of this action to the Southern District of New York; the determination of whether to transfer the case should be made on a case-by-case basis; and under the particular facts of the present case it is both legally appropriate and proper for the court to transfer this proceeding to the Southern District of New York." *Id.* at 15–16.

f.   Orthogen's Post-Hearing Memorandum [DE 34]

First, Orthogen notes that "the topics on which the Court requested supplemental briefing in its Interim Order . . . were prompted by the Caplas' counsel raising arguments for the first time during the oral argument on August 29, 2023" and "are untimely and should be rejected on that ground alone." [DE 34 at 6]. Regardless, Orthogen maintains that the "the answers to the topics on which the Court requested supplemental briefing all support enforcement of the Subpoenas." *Id.*

In short, as to the first topic referenced in the Court's Interim Order—the propriety of a reciprocal deposition—Orthogen argues that, "[a]lthough [D]r. Capla does not have the right to depose Orthogen in this Section 1782 proceeding, this Court has the discretion to condition allowing Orthogen to depose the Caplas on agreeing to allow [D]r. Capla to depose it." *Id.* However, Orthogen maintains that the Court should not exercise its discretion to order a reciprocal deposition because Dr. Capla never requested it, and because any request for a reciprocal deposition would be untimely. *Id.*

With respect to Dr. Schottenstein's participation in any deposition (the Court's second topic area), Orthogen argues that Dr. Schottenstein "will be given the opportunity to participate in any Court-ordered depositions of the Caplas in this Section 1782 proceeding." *Id.* at 7. Further, as to the third and fourth topics referenced in the Court's Interim Order—the receptivity of German courts to any deposition taken in this proceeding and the party which has the burden on the receptivity issue—Orthogen argues that, although neither party "technically" has the burden of proof on the receptivity issue:

> courts routinely find that the second *Intel* factor favors the Section 1782 petitioner when, as here, the petitioner has submitted a sworn declaration from its counsel in the foreign jurisdiction stating that such counsel (i) is unaware of any foreign laws or restrictions that would preclude the use of the discovery sought through Section 1782 in the foreign proceeding and (ii) has no reason to believe that the foreign court would reject or otherwise decline to consider the discovery.

*Id.* at 7. Moreover, Orthogen argues that the only instance when the second *Intel* factor (receptivity) disfavors Section 1782 discovery "is when the respondent has presented authoritative proof that the foreign court would reject the discovery," which Orthogen argues Deponents have not presented. *Id.*

And finally, as to whether it is legally appropriate or proper for this Court to transfer the Section 1782 proceeding to the United States District Court for the Southern District of New York, Orthogen argues that it would not be appropriate for a variety of reasons, including: (1) Deponents waited to raise a transfer request until the August 29, 2023 hearing; (2) any transfer would improperly allow Deponents a "do-over" after full and extensive briefing in this case; and (3) Dr. Capla's sworn declaration states that he resides in Boca Raton, Florida, and does not mention that he also resides in New York. *Id.* at 7–8.

### III.  LEGAL STANDARD & ANALYSIS

28 U.S.C. § 1782(a) states in pertinent part that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." The statute further explains that the order may be made "upon the application of any interested person and may direct that the testimony be given, or document or other thing be produced, before a person appointed by the court." 28 U.S.C. § 1782(a). If the court does appoint such a person, the individual has the "power to administer any necessary oath and take the testimony or statement." *Id.* Additionally, the court's order "may prescribe the practice and procedure . . . for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.* The statute does not, however, preclude the assertion of any privileges by the individual directed to give testimony or produce a document or other thing. *Id.*

In deciding a Section 1782 application, the Court must first determine whether the four statutory requirements are met. If these *prima facie* requirements are satisfied, the Court may

13

then consider certain other factors to determine whether it should exercise its discretion to grant the Section 1782 application. *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 244-45 (2004); *In re Kivisto,* 521 F. App'x 886, 888 (11th Cir. 2013); *Kang v. Noro-Moseley Partners,* 246 F. App'x 662, 664 (11th Cir 2007). Accordingly, because Deponents now seek to quash the Section 1782 Application previously granted by this Court, the Court will first analyze whether Orthogen has met the statutory requirements of Section 1782. The Court will then analyze the discretionary *Intel* factors, among other additional considerations.

    a.  <u>Whether the Statutory Requirements of § 1782 Are Met in this Case</u>

A district court may grant an application under Section 1782 if four requirements are met: "(1) the request must be made 'by a foreign or international tribunal,' or by 'any interested person'; (2) the request must seek evidence, whether it be the 'testimony or statement' of a person or the production of 'a document or other thing'; (3) the evidence must be 'for use in a proceeding in a foreign or international tribunal'; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance." *In re Application of Consorcio Ecuatoriano de Telecomunicaciones S.A.*, 747 F. 3d 1262, 1269 (11th Cir. 2014) (citing *In re Clerici*, 481 F. 3d 1324,1331-32 (11th Cir. 2007)); *Kang*, 246 F. App'x at 664.

Here, the Court previously considered the four requirements under Section 1782 when it considered Orthogen's *ex parte* Application and granted it. [DE 11]. Moreover, the Undersigned does find that the statutory prerequisites under Section 1782 are clearly met, as Orthogen—an interested party in the Contemplated German Proceeding—is seeking testimony from Deponents for use in said proceeding. It is also undisputed that Dr. Capla resides in the Southern District of Florida, as attested to in his Declaration [DE 20-1]. And, although there is no accompanying

14

declaration from Yolanda Capla, Dr. Capla attests that both him and his wife were served on the same date with the subpoenas, and there is no indication that Mrs. Capla resides elsewhere. [DE 20-1 at 1]. Further, both Dr. Capla and Mrs. Capla are clearly "found" in this district.

     b.  Whether the *Intel* Factors Are Met in this Case

"[A] district court's compliance with a § 1782 request is not mandatory." *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001). Therefore, since the *prima facie* statutory requirements have been satisfied in this case, the following *Intel* factors may be considered by the Court in deciding whether to exercise the discretion vested under Section 1782(a):

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."

*In re Clerici*, 481 F.3d at 1334 (quoting *Intel Corp.*, 542 U.S. at 264-65). Notably, Section 1782 generally permits broad discovery. *See ZF Automotive US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078, 2088 (2022) (noting that Section 1782 permits much broader discovery than the FAA and that discovery under Section 1782 is available for use in proceedings "within reasonable contemplation").

(i)  The First <em>Intel</em> Factor:

With respect to the first *Intel* factor, Deponents argue that because they will be participants in the Contemplated German Proceeding, the first *Intel* factor weighs against

15

Orthogen.[3] [DE 20-4 at 4]. Orthogen, on the other hand, argues that because it does not intend to sue Mrs. Capla in the Contemplated German Proceeding, the first *Intel* factor favors Orthogen as to the discovery directed at Mrs. Capla. [DE 23 at 9–10]. Moreover, as to Dr. Capla, Orthogen argues that "when, as here, a party seeking discovery pursuant to Section 1782 may be unable to obtain the discovery in the foreign proceeding, the first factor favors granting the discovery." *Id.* at 10. Indeed, according to Orthogen:

> The first *Intel* factor . . . favors the requested discovery, because in sum (i) a German court cannot require [D]r. Capla to appear and provide the requested discovery in the Contemplated German Proceeding (whether pursuant to the Stufenklage procedure or otherwise), (ii) Mrs. Capla would not be a party to the Contemplated German Proceeding and [D]r. Capla would not be incentivized to appear and/or provide the requested discovery , and (iii) if [D]r. Capla declines to appear and/or provide the requested discovery in the Contemplated German Proceeding, Orthogen obtaining the requested discovery here will enable it to pursue its claims far more effectively than it could without the discovery.

*Id.* at 11–12.

Here, the Court finds that the first factor weighs in favor of Orthogen. This is because—based upon the representation of Orthogen—Mrs. Capla is not an intended participant in the Contemplated German Proceeding. Additionally, although Dr. Capla *is* an intended participant in the Contemplated German Proceeding, there is an apparent difficulty in obtaining discovery from Dr. Capla in that proceeding, which also weighs in favor of Orthogen. *See in re Clerici*, 481 F.3d at 1334–35 ("In this case, however, the first factor does not favor Clerici because Clerici has left Panama and the Panamanian Court cannot enforce its order against Clerici directly while Clerici is in the United States.").

---

[3] Deponents did not specifically cite *Intel* in their Motion to Quash. However, as stated earlier, Deponents have attached a Memorandum in Support of the Motion to Quash at DE 20-4, which references the *Intel* factors.

In this regard, as to the difficulty in obtaining the discovery sought, the Court notes that the parties have essentially provided competing Declarations concerning discovery under German law. *See* DE 4; DE 20-3; 23-1; 26-2; 33-1; 34-1. While the Court need not "engage in 'speculative forays' into 'unfamiliar' legal territories to determine the likely reaction of a [German] court to any Section 1782 discovery," *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *7 (S.D. Fla. Dec. 18, 2018) (quoting *In re Sampedro*, No. 18mc47 (JBA), 2018 WL 5630586, at *4 (D. Conn. Oct. 30, 2018)), the Court nonetheless finds the Supplemental Declaration of Dr. Stefan Kruger [DE 23-1] particularly persuasive.

As attested by Dr. Kruger:

> were Orthogen to be permitted to pursue the Section 1782 discovery it seeks here, such discovery likely would enable Orthogen to skip to the final step of the Stufenklage process (pursuant to which Orthogen could seek a judgment from the German court against [D]r. Capla for a specific amount), because Orthogen would be able not only to plead its claims against [D]r. Capla, but also to support its claims with evidence, including documents and testimony from [D]r. Capla regarding the extent of its damages.

[DE 23-1 at 5–6 ¶ 15]. While the Supplemental Declaration of Dr. Daniel H. Sharma partially addresses this assertion—noting that Orthogen would "only need to submit sufficiently particularized facts, not evidence from a deposition of Edward Capla or otherwise to obtain a money judgment"—Dr. Sharma's Supplemental Declaration does not address the efficiency of skipping to the final stage of the Stufenklage process. [DE 26-2 at 6–7 ¶ 20].

(ii) The Second and Third *Intel* Factors:

With respect to the second and third *Intel* factor, Deponents address them collectively. Specifically, Deponents argue that:

> German jurisprudence has specific and detailed statutes, rules and common law court rulings on how to go about obtaining the discovery that Orthogen seeks in its Section 1782 application to the Court. The application made in the present case

17

is an attempt to circumvent those German judicial and governmental policies. In the case of *In re Abud Velech*, 2020 WL 8919124 (S.D. Fla. Dec. 31, 2020), the court stated: "A perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in the court's analysis." 2020 WL 8919124 at \*9. In making its application in the present proceeding, Orthogen has not so much side stepped less than favorable discovery rules, but rather has "thumbed its nose" at the German courts and their rules of procedure and the German legislature and the statutes written to obtain the documents and information sought.

[DE 20-4 at 4–5]. In response, Orthogen argues that in order for the second and third factors to weigh against the requested discovery, Deponents:

would have to provide "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782" (second factor), *e.g.*, *In re Deposito Centralizado*, 2021 WL 2323226, at \*7 (S.D. Fla. June 1, 2021), or demonstrate that the 1782 Petition is "a 'circumvention' of foreign rules" (third factor), *e.g.*, *In re Barnal*, 2018 WL 6620085, at \*7 (S.D. Fla. Dec. 18, 2018). . . . [Deponents] have done (and can do) neither.

[DE 23 at 12]. To this end, Deponents argue that "courts in this district consistently have rejected the precise argument that [Deponents] are advancing: that a party is required to seek discovery in the foreign tribunal prior to seeking discovery under Section 1782." *Id.* at 13.

"The second *Intel* factor examines whether the foreign tribunal is willing to consider the information sought. . . . In examining the second *Intel* factor, the court looks at whether authoritative proof exists that a foreign court would reject evidence obtained with the aid of § 1782." *In re Abud Valech*, No. 20-mc-23408, 2020 WL 8919124, at \*5 (S.D. Fla. Dec. 31, 2020), *report and recommendation adopted*, No. 20-MC-23408 (S.D. Fla. Mar. 18, 2021). In this regard, "district courts need not apply a rigid burden-shifting framework to properly weigh the discretionary factor of receptivity in a § 1782 case." *Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019). And, "the party requesting discovery does not have to meet a threshold requirement that evidence sought would be discoverable under the law governing the

foreign proceeding." *In re Abud Valech*, 2020 WL 8919124, at *5 (citing *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1304 n.3 (S.D. Fla. 2012)). Indeed, "there is a difference between a foreign court's receptivity or nonreceptivity to the information requested and the 'foreign discovery requirement.'" *Id.*

As to the third *Intel* factor, "courts have held that even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery." *In re: Application of Bracha Found.*, 663 F. App'x 755, 765 (11th Cir. 2016). However, "[w]hile the court does not require an applicant to conclusively establish that they have exhausted all discovery attempts abroad, 'a perception that an applicant has "side-stepped" less-than favorable discovery rules by resorting immediately to § 1782 can be a factor in the court's analysis." *In re Abud Valech*, 2020 WL 8919124, at *6 (alteration omitted). Courts are "hesitant to utilize [the] broad discretion afforded . . . by § 1782, where it appears that the Applicant is attempting to obtain discovery that . . . was already denied by the foreign tribunal." *In re Kurbatova*, No. 18-mc-81554, 2019 WL 2180704, at *4 (S.D. Fla. May 20, 2019).

Here, the Court finds that the second and third *Intel* factors also weigh in favor of Orthogen. As noted above, the Court need not "engage in 'speculative forays' into 'unfamiliar' legal territories to determine the likely reaction of a [German] court to any Section 1782 discovery." *In re Bernal*, 2018 WL 6620085, at *7 (quoting *In re Sampedro*, 2018 WL 5630586, at *4). While Deponents and Orthogen have each presented declarations concerning German law, Deponents have failed to provide *authoritative proof* that a German court would reject the evidence sought under Section 1782 in this case. *See In re Abud Valech*, 2020 WL 8919124, at *5; *In re Bernal*, 2018 WL 6620085, at *7 ("We need only consider authoritative proof that a

foreign tribunal would reject evidence obtained under section 1782."). In fact, in the *second* Supplemental Declaration of Dr. Stefan Kruger [DE 34-1], Dr. Kruger attests that "a German court presiding over the Contemplated German Proceeding almost certainly would be receptive to any deposition testimony of the Caplas taken in this Section 1782 proceeding." [DE 34-1 at 2 ¶ 4]. Thus, after reviewing the parties' somewhat competing expert declarations, the Court finds that the argument by Orthogen—that a German court would accept deposition testimony and that Deponents have produced no evidence that a German court would reject such evidence—carries the day. *See* DE 34 at 14–20 and cases cited therein. This is especially the case considering "courts routinely grant Section 1782 applications for proceedings in Germany." *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018).

Further, although Deponents cite *In re Abud Valech* as the sole case in support of their argument regarding the second and third *Intel* factors, that case is inapposite. Specifically, in that case, the Section 1782 applicant sought information "that was previously denied in Ecuador for both substantive and procedural reasons." *In re Abud Valech*, 2020 WL 8919124, at * 9. In the instant case, however, there is no indication whatsoever that any German court has denied any of the discovery sought by Orthogen. And, there is no requirement that Orthogen first seek discovery in a German court before seeking discovery under Section 1782. *See In re: Application of Bracha Found.*, 663 F. App'x at 765.

### (iii) The Fourth *Intel* Factor:

Finally, as to the fourth *Intel* factor, Deponents argue that "[i]n the context of the facts and circumstances surrounding the present application, the request becomes burdensome because it will necessarily raise the obvious risk that the deponents will be subjected to the same discovery at least twice and possibly three times considering the pending case in the Southern

District of New York where all three sides are parties and the threatened litigation in Germany."

[DE 20-4 at 5]. Orthogen, in contrast, argues that:

> [t]he subpoenas that Orthogen seeks to serve on [Deponents] are narrowly tailored to obtain documents testimony about topics that are central to its anticipated claims in the Contemplated German Proceeding: the number of patient treatments provided under the license Agreements, the amounts paid by patients and received by [D]r. Capla and Dr. Schottenstein in connection with those treatments, and the representations about the treatments that were made to Orthogen.

[DE 3 at 26].

Here, the Court finds that the fourth *Intel* factor weighs in favor of Orthogen. The dispute in this case as to the Motion to Quash and Application—save for the relevancy of the 2011 Agreement—is over whether the subpoenas are necessary in light of the S.D.N.Y. action and the Contemplated German Proceeding. Stated differently, Deponents do not argue the intrusiveness or burdensomeness in terms of the information itself. Indeed, the entire purpose of the Declaration of Dr. Daniel H. Sharma [DE 20-3] is to establish that the discovery sought by Orthogen can be obtained in the Contemplated German Proceeding. Instead, Deponents argue that the discovery will be burdensome in light of the duplicative nature of the discovery sought in this district. In this regard, Deponents advance a *forum non conveniens* argument and contend that a stay (or transfer to the S.D.N.Y.) is appropriate.

First, with respect to Deponent's *forum non conveniens* argument, as noted by Orthogen, that doctrine "has continuing application in federal courts only in cases where the alternative forum is abroad." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). In any event, as to whether discovery is more appropriate in the S.D.N.Y. action, after reviewing the papers and listening to argument of counsel, the Court does find that a stay of this action pending termination of the S.D.N.Y. action or a transfer to the S.D.N.Y. is not appropriate here,

for a number of reasons. First, Orthogen has properly filed the Section 1782 proceeding in this district. Second, the claims for which Orthogen seeks discovery in the Contemplated German Proceeding are separate and apart from the claims in the S.D.N.Y. action. *See* DE 23 at 21. Third, Deponents never requested transfer to the S.D.N.Y. until the August 29, 2023 hearing in this case. Such a request is untimely and constitutes waiver. And fourth, Deponents clearly reside in this district (and are found in this district) and have already engaged in significant briefing and expense (including an in-person oral argument). Thus, for these reasons (and for the reasons cited by Orthogen (DE 34 at 20–24)), the Court finds both a stay and a transfer inappropriate. Indeed, the Court has heard substantial argument and is prepared to expeditiously rule, which advances the purposes of Section 1782 and Rules 1 and 45 of the Federal Rules of Civil Procedure.

Accordingly, because Deponents do not argue that the information sought through discovery is itself intrusive or burdensome, and because *forum non conveniens* and a stay or transfer to the S.D.N.Y. action are inappropriate in this case, the Court finds that the fourth *Intel* factor (and, in fact, all *Intel* factors) weighs in favor of Orthogen in this case. Moreover, to the extent Deponents argue the 2011 Agreement is not relevant in this case, the Court finds otherwise, as Dr. Capla "became a licensee of the Regenokine Program pursuant to that agreement." [DE 23 at 17].

While the Court would now ordinarily determine whether the subpoena complies with the requirements of the Federal Rules of Civil Procedure, *see In re Application of Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *13 (S.D. Fla. Jan. 19, 2011), the Court need not do so here, as Deponents advance no argument

concerning such. And, based upon the Court's review of the subpoenas, the subpoenas to appear to be in compliance with the Federal Rules of Civil Procedure.

c.   <u>Whether Additional Factors Support Orthogen's Requested Discovery</u>

In addition to the *Intel* factors, the Eleventh Circuit has stated that courts may also consider whether the Section 1782 application was "made in bad faith," was "for the purpose of harassment," or was part of a "fishing expedition." *In re Kivisto,* 521 F. App'x. 886, 888 (11th Cir. 2013). The Eleventh Circuit has also stated that, in considering a Section 1782 application, "[a] district court can deny discovery where the information sought is irrelevant to the causes of action." *Kang v. Noro-Moseley Partners.*, 246 F. App'x 662, 664 (11th Cir. 2007); *In re Application of Braga*, 789 F. Supp. 2d 1294, 1304 (S.D. Fla. 2011). To this end, both the Supreme Court and the Eleventh Circuit have explicitly recognized that "[a] district court has the authority to grant an application for discovery if the applicant satisfies statutory requirements, 28 U.S.C. § 1782(a), but the 'court is not required to grant…[the] application merely because it has the authority to do so.'" *Intel,* 542 U.S. at 264; *In re Kivisto*, 521 Fed. Appx. at 888.

Here, the Court finds that Orthogen's Section 1782 Application was not made in bad faith, was not done for the purpose of harassment, and was not part of a fishing expedition. In this regard, Orthogen argues that, "[a]lthough [D]r. Capla does not have the right to depose Orthogen in this Section 1782 proceeding, this Court has the discretion to condition allowing Orthogen to depose the Caplas on agreeing to allow [D]r. Capla to depose it." [DE 34 at 6]. Orthogen further states that "[i]f the Court were to do so, Orthogen would consent to a reciprocal deposition." *Id.* Simply stated, Orthogen's willingness to consent to a reciprocal deposition—that is, a deposition of Orthogen in addition to the deposition of Deponents—demonstrates that its

Section 1782 Application is hardly the product of bad faith discovery or harassment, and is not part of a fishing expedition.

Regardless, as it pertains to reciprocal discovery, the Court finds that Deponents have waived any request to engage in such by not timely raising the issue until the August 29, 2023 hearing. But even then, the Court notes that Deponents did not seek reciprocal discovery and instead attempted to use it as an argument against the depositions going forward at all. Indeed, in Deponents' post-hearing memorandum, Deponents merely assert obstacles to a reciprocal deposition and do not even request it. So, Deponents initially waived reciprocal discovery, and, despite later discussing reciprocal discovery at the August 29, 2023 hearing, never even requested it after doing so. Consequently, the Court finds it inappropriate to order reciprocal discovery in this Section 1782 proceeding despite Orthogen's consent.

Additionally, the Court also finds that Orthogen's willingness to involve Dr. Schottenstein in this case stands at odds with the Section 1782 Application being made in bad faith, for the purpose of harassment, or as part of a fishing expedition. Despite Deponents' argument to the contrary, the Court finds that nothing within the Federal Rules of Civil Procedure precludes Dr. Schottenstein's participation in any deposition of Deponents in this case. As stated in *In re Pons*, No. 19-MC-23236, 2020 WL 5355967 (S.D. Fla. Sept. 7, 2020), "[u]nder Rule 27, 'even *expected* adverse parties are entitled to notice before a deposition or tangible thing is taken pursuant to a Section 1782 subpoena." *Id.* at *4 (alteration omitted) (quoting *In re Rivada Networks*, 230 F. Supp. 3d 467, 473 (E.D. Va. 2017)). Thus, because Orthogen maintains Dr. Schottenstein is an anticipated party to the Contemplated German Proceeding, DE 34 at 13, the fact that that Dr. Schottenstein is not currently a party in this case is immaterial.

24

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Deponents' Objections to Subpoenas Duces Tecum, Motion to Quash or Modify Subpoenas or the Alternative Motion to Stay Enforcement of Subpoenas [DE 20] is **DENIED**, as stated herein, and any objections are **OVERRULED**. The Honorable Donald M. Middlebrooks, United States District Judge, has already granted Orthogen's *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding [DE 1]. After extensive briefing and argument of counsel, the Court finds that all four *Intel* factors weigh in favor of Orthogen's requested discovery, that the matter is properly before this district, and that Orthogen's Application was not made in bad faith, was not done for the purpose of harassment, and was not part of a fishing expedition. Thus, the subpoenas sought as part of the Section 1782 Application are appropriate in this case.

The Court orders the parties' counsel to immediately confer in good faith and agree on deposition dates and times for Dr. Edward Capla and for Yolanda Capla, which depositions shall take place no later than twenty (20) days from the date of this Order. As to the assertion that Mrs. Capla has a spousal privilege in Germany, any party can assert a privilege during the depositions if such assertion is done in good faith and is legally and factually justified. The German court can rule if a spousal privilege applies at the time any party seeks introduction of the deposition.

**ORDERED and ADJUDGED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 16th day of October, 2023.

WILLIAM MATTHEWMAN
United States Magistrate Judge